# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 10, 2016          Decided February 7, 2017

No. 16-5054

JUDICIAL WATCH, INC.,
APPELLANT

v.

UNITED STATES DEPARTMENT OF DEFENSE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01935)

———

*Jason B. Aldrich* argued the cause for appellant. With him on the briefs was *Paul J. Orfanedes*.

*August E. Flentje*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Matthew Collette*, Attorney.

Before: HENDERSON and PILLARD, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Judicial Watch, Inc. (Judicial Watch) brought this action against the United States Department of Defense (DOD or the Department), alleging that the Department violated its obligations under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, when it failed to release copies of documents embodying the Secretary of Defense's 2014 determination that five Guantanamo Bay detainees could be transferred to Qatar. The Department moved for summary judgment. Judicial Watch acknowledged that the Department had produced one document, but opposed summary judgment on the ground that it continued to withhold a second document to which Judicial Watch believed it was entitled: a memo from Assistant Secretary of Defense Michael Lumpkin to Secretary of Defense Chuck Hagel. The Department claimed that it had no obligation to produce that memo because it was a privileged deliberative document. The district court agreed and entered judgment in DOD's favor. Judicial Watch appealed. Because the district court correctly determined that the memo was privileged, we affirm.

I.

The National Defense Authorization Act for Fiscal Year 2014 (NDAA) provides that the Secretary of Defense may transfer a prisoner held at Guantanamo Bay to the individual's country of origin, or any other foreign country, if so directed by a competent tribunal or if the Secretary "determines" that the prisoner is "no longer a threat to the national security of the United States." NDAA, Pub. L. No. 113-66, § 1035(a), 127 Stat. 672, 851 (2013). Otherwise, the Secretary may transfer a Guantanamo Bay prisoner only if he or she "determines" that: (1) "actions that have been or are planned to be taken will substantially mitigate the risk of such individual engaging or reengaging in any terrorist or other hostile activity that threatens the United States or United States persons or

interests;" and (2) "the transfer is in the national security interest of the United States." *Id*. at § 1035(b). In making those determinations, the Secretary must "evaluate and take into consideration" eight separate factors. *Id.* at § 1035(c).

On May 31, 2014, the Secretary of Defense exercised his statutory authority to transfer five Guantanamo Bay prisoners to Qatar in exchange for the release of Bowe Bergdahl, an American soldier who was captured and held in Afghanistan. That same day, the Secretary sent eight identical classified letters to eight members of Congress statutorily entitled to notice, explaining that he had authorized the transfer under NDAA section 1035(b) because he "determined" that: (1) the government of Qatar would "substantially mitigate" the threats posed by the prisoners; and (2) the transfer was "in the national security interest of the United States." J.A. 17. Three days later, Judicial Watch submitted the FOIA request at issue here, asking the government to produce "any and all records concerning, regarding, or relating to" the Secretary of Defense's "determinations" regarding the five Guantanamo Bay prisoners who were transferred to Qatar. *Id*. at 28. In response to DOD's objection that the request was overbroad, Judicial Watch pared it down to "any and all Secretary of Defense memos signed on or before May 31, 2014, that approved the release of the five Guantanamo Bay detainees exchanged for Sgt. Bowe Bergdahl," as well as "copies of any 'determinations' made by the Secretary of Defense" pursuant to section 1305(a) of the NDAA "if such determinations [were] . . . separate and apart from the 'memos' that the Secretary of Defense may have signed." *Id.* at 39.

Judicial Watch did not receive a timely response to its request. On November 18, 2014, Judicial Watch filed a complaint in district court against the Department of Defense alleging that the Department had failed to comply with its

obligations under FOIA. DOD answered that it was "in the process of responding to [Judicial Watch's] FOIA request." J.A. 11. The Department provided its final response on April 27, 2015, stating that "[t]he only documents responsive to [the] request [were the] eight identical classified letters addressed to members of Congress." J.A. 13. DOD gave Judicial Watch a copy of one of the eight letters with all classified information redacted. *See* 5 U.S.C. § 552 (b) (1) (explaining that FOIA's disclosure requirements are inapplicable to "properly classified" information).

The Department then moved for summary judgment. In support of its motion, DOD submitted a declaration from Mark H. Herrington, an attorney in the Department's Office of General Counsel, describing the processes that DOD had used to identify records responsive to Judicial Watch's FOIA request. Department staff had thoroughly searched DOD records and concluded that the only "potentially responsive" material was a packet prepared by Assistant Secretary of Defense Michael Lumpkin. *Id.* at 23. The packet included a "cover memo[]" from Mr. Lumpkin to the Secretary of Defense (the Lumpkin Memo) setting forth Mr. Lumpkin's recommendation regarding the Guantanamo Bay detainees, and the eight letters to members of Congress, which Mr. Lumpkin had prepared for the Secretary's signature. *Id.* Mr. Herrington attested that the Secretary did not sign or endorse the Lumpkin Memo, nor send the memo to Congress. Rather, the Secretary only signed and sent the accompanying letters. *Id.*

Mr. Herrington averred that DOD staff did not produce the Lumpkin cover memo because it "did not constitute a signed memo or other determination by the Secretary of Defense relating to the detainees" and so was not responsive to Judicial Watch's request. J.A. 24. Even if the memo were responsive,

Mr. Herrington asserted, it would be exempt from disclosure as a privileged deliberative document. *See Pub. Citizen*, *Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (explaining that FOIA does not require agencies to disclose privileged information).

The district court granted DOD's summary judgment motion. *See Judicial Watch, Inc. v. U.S. Dep't of Def.*, No. 14 Civ. 1935 (ABJ), 2016 WL 410993 (D.D.C. Feb. 2, 2016) (*Judicial Watch I*). The court described the Lumpkin Memo as "responsive to [Judicial Watch's] request," *id.* at *1, but held that it was protected by the "deliberative process privilege," *id.* at *2. Judicial Watch appealed.

## II.

Congress enacted FOIA to give the public "access to official information long shielded unnecessarily from public view." *Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Attorneys*, 829 F.3d 741, 744 (D.C. Cir. 2016) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)). The Act requires government agencies to make information available upon request, unless the information is protected by one of nine statutory "exemptions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *see* 5 U.S.C. § 552(b). In this case, the government has invoked Exemption 5, 5 U.S.C. § 552(b)(5), which allows agencies to withhold information that would in the context of litigation be protected from discovery by a "recognized evidentiary or discovery privilege[]." *Pub. Citizen*, 598 F.3d at 874. "Among th[e] privileges protected by Exemption 5 is the . . . deliberative process privilege," *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982) (internal quotation marks omitted), which protects government documents that are both "predecisional" and "deliberative," *Pub. Citizen*, 598 F.3d at

874. Documents are "predecisional" if they are "generated before the adoption of an agency policy," and "deliberative" if they "reflect[] the give-and-take of the consultative process." *Id.* (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)).

The deliberative process privilege reflects the common-sense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options, coupled with the understanding that employees would be chilled from such rigorous deliberation if they feared it might become public. *See Sears*, 421 U.S. at 150 ("[H]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . ." (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974)). The privilege also avoids confusion from premature disclosure of ideas that are not—or not yet—final policy, and misimpressions from "dissemination of documents suggesting reasons and rationales" not ultimately relied on. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The question in this case is whether the Lumpkin Memo is covered by the deliberative process privilege and therefore exempt from disclosure under FOIA. Judicial Watch does not dispute that, when the Lumpkin Memo was drafted, it was both predecisional and deliberative. Nevertheless, Judicial Watch notes, a document can lose its predecisional character—and the protections of the privilege—if an agency adopts the document as its own. *Sears*, 421 U.S. at 161; *Coastal States*, 617 F.2d at 866; *Horowitz v. Peace Corps*, 428 F.3d 271, 276 (D.C. Cir. 2005). To adopt a deliberative document, it is not enough for an agency to make vague or equivocal statements implying that a position presented in a deliberative document has merit; instead, the agency must make an "*express*[]" choice to use a

deliberative document as a source of agency guidance. *Sears*, 421 U.S. at 161 (emphasis in original); *see also Afshar v. Dep't of State*, 702 F.2d 1125, 1142 (D.C. Cir. 1983).

Judicial Watch contends that the Secretary of Defense "expressly adopted" the Lumpkin Memo when he signed the attached letters to Congress, Reply Br. 2, but that contention is unsupported by the record. Mr. Herrington stated that the Secretary never "endorse[d]" the Lumpkin Memo. The only reasoning that the Secretary of Defense held out as his own was the reasoning in the congressional letters.

Judicial Watch characterizes the Secretary's signing and sending the letters as a ratification of the cover memo's reasoning. That does not necessarily follow. The Secretary might have relied on the memo's reasoning in deciding to take the action it recommended, but it is also possible that he did not. We therefore cannot treat the memo as a decisional document subject to disclosure. *Sears*, 421 U.S. at 161; *see also Afshar*, 702 F.2d at 1143 n.22 (suggesting that an agency employee cannot strip a memo of its predecisional character by silently "carr[ying] out" the memo's recommended course of action).

Judicial Watch pushes back on this conclusion in three ways, each of which is unconvincing. First, because the district court found that the Lumpkin Memo was "responsive" to Judicial Watch's request for signed "Secretary of Defense memos" and official secretarial "determination[s]," Judicial Watch concludes that the Lumpkin Memo must have been an official secretarial document. We are sensitive to the fact that plaintiffs in FOIA litigation must of necessity rely on inferences from the limited information available to them about documents asserted to be privileged. In this case, that means Judicial Watch is reading a great deal into the district court's

description of the Lumpkin Memo. But after reviewing the memo in camera, we conclude that the memo is neither a signed memo nor a secretarial determination regarding the detainees. Thus, while we are perplexed by the district court's statement that the Lumpkin Memo was responsive to Judicial Watch's FOIA request—at least as the request was pared down to seek only the Secretary's signed memos or decisional documents— we agree with that court's holding that the memo was privileged.

Second, Judicial Watch points to Mr. Herrington's statement that it is "common for the Secretary of Defense not to endorse a cover memo[], if he proceeds to sign the correspondence submitted beneath the cover memo[]." But, taking into account the Secretary's common practices, Mr. Herrington concluded that signing the correspondence submitted beneath the Lumpkin Memo was not an "endorse[ment]" of the memo's analysis. Herrington Decl. at 5.

Finally, Judicial Watch insists that the Secretary must have adopted the Lumpkin Memo to satisfy his recordkeeping obligations under 44 U.S.C. § 3101. *See* 44 U.S.C. § 3101 (requiring the "head of each [f]ederal agency" to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency"). But, to satisfy his obligations under that statute, the Secretary need only preserve the memo and signed letters to Congress. He need not also produce them or any other nondecisional records of the agency's internal workings and "essential transactions." *Id.*

9

***

Seeing no reason to disturb the district court's judgment that the Lumpkin Memo was a privileged deliberative document, we affirm.

*So ordered.*