# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 10, 2019        Decided April 21, 2020

No. 18-5241

HALL & ASSOCIATES, FOIA REQUESTER,
APPELLANT

v.

ENVIRONMENTAL PROTECTION AGENCY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01055)

*John C. Hall* argued the cause and filed the briefs for appellant.

*Laura Myron*, U.S. Department of Justice, argued the cause for appellee. On the brief were *Jessie K. Liu*, U.S. Attorney at the time the brief was filed, *H. Thomas Bryon, III*, Attorney, U.S. Department of Justice, Civil Division, Appellate Staff, and *Rachel F. Homer*, Attorney at the time the brief was filed, U.S. Department of Justice, Civil Division, Appellate Staff. *Dana Kaersvang*, U.S. Department of Justice, entered an appearance.

Before: HENDERSON, GRIFFITH, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:   Hall & Associates ("Hall") sought certain records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, from the Environmental Protection Agency.  The records related to the EPA's purported adoption of a "nonacquiescence decision"—that is, a determination to not follow a specific court of appeals' judgment in cases arising outside of that circuit.  The judgment at issue is that of the United States Court of Appeals for the Eighth Circuit in *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013).

On November 19, 2013, the EPA issued a press statement advising the public that (i) *Iowa League of Cities* was legally binding within the Eighth Circuit, and (ii) outside of that circuit, the EPA would continue to apply the regulatory interpretations vacated by the Eighth Circuit's judgment.  The EPA does not contest on appeal that this position amounted to a nonacquiescence decision.

The central dispute in this appeal is one of timing.  Did the EPA settle on its nonacquiescence position at the time of that press statement on November 19, 2013, or in the days leading up to it?  Or even earlier?  The answer to the timing question will determine whether documents regarding that nonacquiescence decision—all but one of which were created between November 14, 2013 and November 18, 2013—are predecisional and, as such, may qualify for withholding under the EPA's deliberative process privilege.

Because the date on which the EPA reached a final decision to not acquiesce remains a genuine issue of disputed material fact, we vacate the district court's grant of summary

judgment in favor of the EPA and remand for further proceedings.

**I**

**A**

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Bartko v. Department of Justice*, 898 F.3d 51, 61 (D.C. Cir. 2018) (quoting *Citizens for Responsibility & Ethics in Washington v. Department of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014)). By empowering individuals to obtain copies of agency records just by the asking, FOIA protects the basic right of the public "to be informed about what their government is up to." *Competitive Enter. Inst. v. Office of Science & Tech. Policy*, 827 F.3d 145, 150 (D.C. Cir. 2016) (quoting *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

That said, FOIA does not pursue transparency at all costs. *See Bartko*, 898 F.3d at 61–62. Congress recognized that "legitimate governmental and private interests could be harmed by release of certain types of information," and so attempted to "balance the public's need for access to official information with the Government's [legitimate] need for confidentiality." *AquAlliance v. United States Bureau of Reclamation*, 856 F.3d 101, 102–103 (D.C. Cir. 2017) (formatting modified). To that end, Congress exempted nine categories of records from FOIA's general requirement of disclosure. *See* 5 U.S.C. § 552(b)(1)–(9). But even when an exemption applies, the agency must disclose "[a]ny reasonably segregable portion of a record," the "amount of information deleted, and the exemption under which the deletion is made." *Id.* § 552(b).

This case involves Exemption 5, which allows agencies to withhold from disclosure records that are

> inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested[.]

5 U.S.C. § 552(b)(5).

Under Exemption 5, agencies generally can withhold materials "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). That includes materials that fall under an agency's deliberative process or attorney-client privilege. *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The deliberative process privilege "protects government documents that are both [i] predecisional and [ii] deliberative" in nature. *Judicial Watch, Inc. v. Department of Defense*, 847 F.3d 735, 739 (D.C. Cir. 2017) (formatting modified). In that way, the privilege "reflects the commonsense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options, coupled with the understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." *Id.*

**B**

Hall submitted a FOIA request to the EPA on November 13, 2014. The request sought certain records pertaining to the EPA's purported decision to not follow outside of the Eighth

Circuit that court's judgment in *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013).

In *Iowa League of Cities*, the Eighth Circuit vacated two EPA rules regulating water treatment processes at municipally owned sewer systems. *See Iowa League of Cities*, 711 F.3d at 854, 878.

By October 8, 2013, the EPA had forgone legal avenues to challenge that decision. The EPA's petition for rehearing en banc was denied on July 10, 2013. *Iowa League of Cities v. EPA*, No. 11-3412, 2013 U.S. App. LEXIS 14034 (8th Cir. July 10, 2013). The deadline for filing a petition for a writ of certiorari was October 8, 2013. *See* 28 U.S.C. § 2101(c); *see also* SUP. CT. R. 13. No petition was ever filed.[1] Instead, "[b]eginning in 2013, EPA made statements indicating that it would not acquiesce in or follow the Eighth Circuit's decision outside of that circuit." *Center for Regulatory Reasonableness v. EPA*, 849 F.3d 453, 454 (D.C. Cir. 2017).

As evidence that the EPA likely had records of a decision not to acquiesce in *Iowa League of Cities*, Hall's November 2014 FOIA request cited trade press publications and reports of the National Association of Clean Water Administrators ("Water Administrators Association") describing public statements by two EPA officials. Specifically, at a November 20–22, 2013 meeting of the Water Administrators Association, the EPA's then Acting Assistant Administrator for Water, Nancy Stoner, was reported to have stated that *Iowa League of Cities* was "not binding" outside of the Eighth Circuit, and that the EPA would look "on a case-by-case [basis] at situations in

---

[1] Nor did the EPA seek an extension of the time to file a certiorari petition. *See* 28 U.S.C. § 2101(c) (allowing a Justice of the Supreme Court to grant an extension of up to sixty days for good cause shown); *see also* SUP. CT. R. 13 (same).

particular communities" outside of that circuit to determine whether to enforce the vacated EPA rules. J.A. 73–74, 159, 273. Then, at the National Water Policy Forum & Fly-In on April 9, 2014, Stoner and Mark Pollins, Director of the Water Enforcement Division in the EPA's Office of Civil Enforcement, were said to have reiterated the EPA's "position that *Iowa League of Cities* is not binding * * * outside of the [Eighth] Circuit" and that it "would continue to apply the [vacated rules] outside of that area." J.A. 74.

Against that backdrop, Hall's FOIA request sought from the EPA:

1. Any EPA records which discuss whether or not Ms. Stoner's November 2013 statement was accurately reported in the trade press;
2. Any talking points and/or other materials prepared for Ms. Stoner and/or Mr. Pollins in advance of their presentations at either of the above-referenced events or used by them at the events;
3. Any presentation materials EPA distributed as part of the aforementioned presentations;
4. Any records that either Ms. Stoner or Mr. Pollins created as part of their respective presentations; and
5. Any records that either Ms. Stoner or Mr. Pollins created in preparation for their respective presentations.

J.A. 74. Hall subsequently clarified that the request pertained "only to documents mentioning EPA's thoughts on how the Agency would be proceeding post-[*Iowa League of Cities*] decision." J.A. 78.

The EPA responded to Hall's revised FOIA request with ten responsive documents.

Document 1 is a November 15, 2013 email meeting invite entitled "Iowa League of Cities." J.A. 172. The meeting invite was sent from Stoner to several high-level managers in the Office of General Counsel and Office of Water, including Steven Neugeboren, Associate General Counsel of the Water Law Office in the Office of General Counsel.

Document 1(a) is a three-page draft of talking points that was attached to that meeting invite. Like Document 1, it was created on November 15, 2013. The talking points were authored by Kevin Weiss, a staff engineer in the Water Permits Division of the Office of Wastewater Management within the Office of Water, for Weiss's coworkers and superiors. They discuss *Iowa League of Cities*, potential "programmatic activities [for the EPA], and potential communication options" regarding the Eighth Circuit's decision. J.A. 159.

Document 1(b), a five-page draft memorandum discussing the same subjects as Document 1(a), was also attached to the meeting invite and prepared by Weiss on November 15, 2013.

Document 2 is a November 14, 2013 email entitled: "RE: IA League of Cities – deliberative process; atty client." J.A. 162–163. It was sent from Stoner to Neugeboren and several other EPA officials, including Weiss.

Document 3 is a November 15, 2013 email sent by Neugeboren responding to the Document 2 email.

Document 4 is a two-email thread from November 18, 2013, involving Weiss, Deborah Nagle (Director of the Water Permits Division), and Connie Bosma (Chief of the Municipal Branch within the Water Permits Division). In the first email,

sent from Nagle to Bosma, Nagle stated that she was on her way to the Water Administrators Association seminar and knew Bosma had previously "armed [Stoner] with talking points on how [the EPA] intend[ed] to apply the [*Iowa League of Cities*] decision." J.A. 375. Nagle asked Bosma to forward her the talking points, "[j]ust in case the topic comes up" at the conference. J.A. 375.

The second email, sent that same day from Weiss to Nagle, attaches "the talking points [Weiss] gave to Nancy Stoner." J.A. 166–167, 375. Those talking points constitute Document 4(a) and are a later version of the Document 1(a) draft talking points.

Also attached to that second email is Document 4(b), a four-page document prepared by Weiss in November 2010. Document 4(b) discusses potential regulatory approaches on the part of the EPA to the matters governed by the two rules that the Eighth Circuit later invalidated. Document 4(b) is the only record produced by the EPA in response to Hall's FOIA request that was not created in November 2013.

Document 5 is a six-email thread involving Stoner, Neugeboren, other EPA officials, and Hall. The thread begins with an email from Hall to Neugeboren on November 15, 2013, in which Hall states its understanding "that EPA informed the public and several states that the [*Iowa League of Cities*] decision does not apply outside of the [Eighth] Circuit," and asks Neugeboren "to confirm or deny that EPA Headquarters has reached a determination on this issue since * * * it was [Neugeboren] that made the announcement[.]" J.A. 381–382. Neugeboren forwarded the message to various EPA officials, including Stoner, and confirmed (internally) that he had publicly said "the decision is [b]inding in the [Eighth] Circuit

and that its implications outside are being considered by the agency." J.A. 188–189.

Finally, Document 6 is a November 26, 2013 email from a staff attorney advisor within the Water Enforcement Division to various EPA officials. The email forwards a Bloomberg BNA article reporting that the EPA would apply *Iowa League of Cities* "on a case-by-case basis" outside of the Eighth Circuit. J.A. 170–171, 383. The staff attorney advisor states in the email his understanding that the EPA would "not apply [*Iowa League of Cities*] *at all* outside the Eighth Circuit[.]" J.A. 383 (emphasis added).

Of these ten responsive documents, the EPA initially released in full to Hall only Document 1—the November 15, 2013 email invite. The EPA withheld Documents 1(a), 1(b), 2, 3, 4(a), and 4(b) in full. And it withheld portions of Documents 4, 5, and 6.

The EPA invoked Exemption 5 to justify all of the withholdings. In particular, the EPA asserted that all of the withheld material fell under the deliberative process privilege because it was both "predecisional and deliberative" in nature. J.A. 97, 106. The EPA further claimed that some of the withheld material also fell within the attorney-client privilege because it contained "confidential communications between [the EPA] and its attorney relating to a legal matter for which [the EPA] has sought professional advice." J.A. 97, 106.

On Hall's administrative appeal, the EPA narrowed the scope of records for which it claimed attorney-client privilege. But it reaffirmed its view that all nine withheld records qualified for the deliberative process privilege. Nonetheless, because four of the fully withheld documents (Documents 1(a), 1(b), 4(a), 4(b)) and one of the partially withheld documents (Document 6) each contained "some reasonably segregable

information," the EPA ordered that new redacted versions of those five documents be provided to Hall.  J.A. 106–107.

## C

Hall then sought judicial review of the withholdings by filing this suit in the United States District Court for the District of Columbia.  *See* 5 U.S.C. § 552(a)(4)(B).

Hall's single-count complaint alleges that the EPA improperly invoked the attorney-client and deliberative process privileges to justify its withholdings.  The complaint asserts that the records were ineligible for withholding under the deliberative process privilege because they were not predecisional:  The EPA had "clearly rendered a final decision regarding the national applicability of the [*Iowa League of Cities*] decision" by the time the records were created.  J.A. 22.

The EPA filed with the district court a *Vaughn* Index explaining its reasoning for each withholding.[2]  It also submitted several declarations by Nagle insisting that the EPA "has not, to date, decided whether and to what extent to follow [*Iowa League of Cities*] outside the Eighth Circuit, saving those questions for permitting or other case-specific contexts."  J.A. 319.  For that reason, Nagle concluded that, at the time the documents at issue were created, the EPA still "had not determined whether and to what extent to apply the decision outside the Eighth Circuit and instead was evaluating any

---

[2] A *Vaughn* Index "consists of a detailed affidavit, the purpose of which is to permit the court system effectively and efficiently to evaluate the factual nature of disputed information" in a FOIA case. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 149 n.2 (1989) (formatting modified); *see also Vaughn v. Rosen*, 484 F.2d 820, 826–828 (D.C. Cir. 1973).

issues related to [*Iowa League of Cities*] on a facility-specific basis." J.A. 319–320.

Both parties moved for summary judgment. But before those motions were resolved, Hall moved to amend its complaint to add a new challenge under 5 U.S.C. § 552(a)(3) to the adequacy of the EPA's initial search for relevant documents. Hall also moved (i) to conduct additional discovery into "several material facts" that remained "in dispute," including "the timing and nature of EPA's nonacquiescence decision," and (ii) to strike one of Nagle's declarations for including assertedly false information, namely, her representations that the EPA had not yet made a decision about whether it would follow *Iowa League of Cities* outside of the Eighth Circuit. Memorandum of Points and Authorities at 26 & n.24, 40, *Hall & Assocs. v. EPA*, No. 1:15-cv-01055-KBJ (Aug. 12, 2016), ECF No. 47-1.

After reviewing the materials *in camera*, the district court granted in part and denied in part each of the parties' cross-motions for summary judgment.

The district court began by rejecting the EPA's contention that its current position—that it would decide whether to apply *Iowa League of Cities* on a case-by-case basis outside of the Eighth Circuit—did not amount to a nonacquiescence decision. The court reasoned that, by reserving the "right to proceed 'consistent with the Agency's existing interpretation' outside of the Eighth Circuit on a case-by-case basis," the EPA had "necessarily * * * refused to commit to applying *Iowa League of Cities* as its policy in all jurisdictions," and that is all that it takes for an agency to adopt a policy of "intercircuit nonacquiescence[.]" J.A. 47 (formatting modified).

The district court then held, as a matter of law, that "the EPA made the nonacquiescence decision at issue here on

November 19, 2013," J.A. 43 (formatting modified), the date that the EPA issued a press release (known as the "Desk Statement") that read:

> The Eighth Circuit's interpretation in *Iowa League of Cities v EPA* of EPA's regulations relating to blending and bypass is legally binding within the Eighth Circuit. Outside of the Eighth Circuit, EPA will continue to work with States and communities with the goal of finding solutions that protect public health and the environment while recognizing economic constraints and feasibility concerns, consistent with the agency's existing interpretation of the regulations.

J.A. 45–46 (district court analysis); J.A. 194 (Desk Statement). The Desk Statement, the district court concluded, "amounted to a formal announcement of nonacquiescence, notwithstanding the EPA's current protestations." J.A. 46.

In so holding, the district court rejected Hall's argument that the record supported at least a reasonable inference that the EPA actually adopted its nonacquiescence position sometime before it issued the Desk Statement. As support for its argument, Hall had pointed to evidence of both internal and public statements by EPA officials that predated the November 19, 2013 Desk Statement. For example, Neugeboren stated publicly on November 13, 2013 (as referenced in Document 5): "It is EPA['s] current contention that the [*Iowa League of Cities*] ruling will only be binding to the [Eighth] Circuit States." J.A. 240, 381–382. Hall also pointed to an internal August 2013 "Options Memo" of the EPA outlining the pros and cons of petitioning or not petitioning for certiorari from the Eighth Circuit's decision. J.A. 197–199. The only "Pro"

identified in the Options Memo for not seeking certiorari was that doing so would leave the EPA free to "formally or informally acquiesce and thereby limit the effect of the decision to the Eighth Circuit." J.A. 199. As of October 8, 2013, the government had decided not to seek certiorari.

Notwithstanding those materials, the district court held that there was no genuine issue of material fact concerning the timing of the EPA's nonacquiescence decision, reasoning that the decision definitively was reached on November 19, 2013. The court reasoned that (i) Neugeboren's earlier statement, on which Hall relied, "can reasonably be interpreted as the mere recitation of a known fact: a decision of the Eighth Circuit Court of Appeals does not 'bind' the EPA outside of the Eighth Circuit," and (ii) "an agency's decision to seek certiorari stands completely apart from a nonacquiescence determination." J.A. 48–49.

Given its factual finding that the EPA's nonacquiescence decision was not adopted until November 19th, the district court ruled that all of the withheld material except Document 6 (prepared November 26, 2013) was predecisional and so met the first eligibility requirement for withholding under the deliberative process privilege.

Next, after reviewing the other withheld documents that were created before November 19th, the district court concluded that everything but Document 4 and small portions of Documents 1(a) and 1(b) was deliberative in nature and thus properly withheld under Exemption 5. Because the EPA did not separately assert attorney-client privilege over Documents 1(a), 4, and 6, the district court ordered the release of Documents 4 and 6 and the portions of Document 1(a) that were not deliberative. As for the portion of Document 1(b) that was not deliberative in nature, the district court ordered it

released after concluding that it also did not qualify for the attorney-client privilege.

To sum it all up, the district court ordered the EPA to release Documents 4 and 6 in full along with portions of Documents 1(a) and 1(b). Conversely, it agreed with the EPA that the deliberative process privilege justified withholding all or portions of Documents 1(a), 1(b), 2, 3, 4(a), 4(b), and 5.

The district court also denied Hall's motion to amend its complaint on the ground that Hall had failed to exhaust its claim of an inadequate search before the EPA. And the court denied as "[m]eritless" Hall's motions for discovery and to strike the relevant Nagle Declaration. J.A. 64. The district court reasoned that both motions "appear[ed] to be motivated by [Hall]'s apparent belief that the EPA has responded to [Hall]'s FOIA request in bad faith and has repeatedly lied to this Court * * * to shield its nonacquiescence policy from judicial review," and then concluded that the record did not support such an assertion. J.A. 64–67. Rather, the EPA had "simply failed to appreciate that the sentiment conveyed in the Desk Statement" amounted to a nonacquiescence determination, which evidenced only an "earnestly held but mistaken view of the law[.]" J.A. 65.

Hall appealed; the EPA did not. The EPA has released the documents and portions of documents ordered to be disclosed by the district court.

## II

The district court exercised subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B). This court's jurisdiction arises under 28 U.S.C. § 1291.

We review *de novo* a district court's decision on summary judgment in a FOIA case. *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1111–1112 (D.C. Cir. 2007). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

District courts have "broad discretion to manage the scope of discovery" in FOIA cases. *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). We will overturn the exercise of that discretion "only in unusual circumstances." *Id.* We also review a district court's ruling on a motion to strike only for an abuse of discretion. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

Finally, leave to amend a complaint should be freely given when justice so requires. FED. R. CIV. P. 15(a)(2). "We review a district court's denial of a motion to amend a complaint for abuse of discretion." *Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir. 2016). It is an abuse of discretion to deny leave to amend without "sufficient reason, such as * * * futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (formatting modified). Amendment is futile if the amended complaint would not withstand a motion to dismiss. *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012). A complaint will, in turn, survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

**III**

**A**

**1**

The indispensable predicate for a grant of summary judgment is that there be no genuine dispute over a question of material fact. *See Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014) ("Our task is not to determine the truth of the matter, but to decide only whether there is a genuine issue for trial.") (formatting modified). Even then, the law must dictate a single outcome after taking all of the facts and reasonable inferences from them in the light most favorable to the non-movant—here, Hall. *See Al-Saffy v. Vilsack*, 827 F.3d 85, 92 (D.C. Cir. 2016) ("If, on the other hand, any material facts are at issue or, though undisputed, are susceptible to divergent inferences, summary judgment must be denied."); *see also Steele v. Mattis*, 899 F.3d 943, 947 (D.C. Cir. 2018) ("[S]ummary judgment is proper only when, viewing the evidence in the light most favorable to [the non-moving party] and drawing all reasonable inferences accordingly, no reasonable jury could find in [the non-moving party's] favor.") (formatting modified).

Said another way, if any reasonable view of the record would permit resolution of a factual dispute in favor of the non-movant, and that fact is material to the outcome, summary judgment must be denied. FOIA cases are no exception. *See, e.g.*, *Evans v. Federal Bureau of Prisons*, 951 F.3d 578, 584, 586–588 (D.C. Cir. 2020).

**2**

For purposes of this appeal, there is no dispute that the EPA's position in the Desk Statement—that (i) *Iowa League of Cities* was "legally binding within the Eighth Circuit," and (ii)

outside of that circuit, the EPA would "continue to work with States and communities * * * consistent with the Agency's existing interpretation of the regulations"—is a nonacquiescence decision. J.A. 45; EPA Br. 9 n.3.

The critical question is only one of timing: Whether the EPA, as a matter of law, carried its burden of establishing that its nonacquiescence decision was reached *only after* all of the documents at issue here were created. *See Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (The agency "bears the burden of establishing the applicability of [a] claimed [FOIA] exemption."); *see also* 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action."). That factual question of timing is material—actually, dispositive—in deciding (i) which of the EPA documents that Hall seeks were created prior to the EPA's nonacquiescence decision, and so satisfy the first requirement for withholding under the deliberative process privilege, and (ii) which were generated after the decision was made, and so cannot be withheld under that privilege.

The district court misstepped in this case because it granted summary judgment to the EPA by resolving against Hall that quintessentially factual dispute concerning the date on which the nonacquiescence position was first adopted. Hall's proffered evidence, the EPA's own submissions (including its *Vaughn* Index and the three Nagle declarations), and our own *in camera* review of the withheld materials offer up a buffet of different dates by which the nonacquiescence decision might have been adopted. Those dates include, but are not confined to, the time of the Desk Statement. The summary judgment record simply does not dictate an answer to that factual question.

For starters, take the EPA's own submissions in district court. There the EPA argued that no decision about acquiescence had *ever* been made, meaning that every document was predecisional. The EPA's *Vaughn* Index insists that the Agency "has not, to date, decided whether and to what extent to follow the *Iowa League of Cities*' decision outside the Eight[h] Circuit, saving those questions for permitting or other case-specific contexts." J.A. 160. Nagle's first declaration makes that same point in identical terms. The EPA, in fact, admits that it never took the position in district court that November 19th was the date that it made "a nonacquiescence determination (because the EPA argued that it *never made* a nonacquiescence decision)[.]" EPA Br. 16 (formatting modified). So not only did no party argue in district court that November 19th was the date of nonacquiescence—both parties argued that it was not. Given that, nothing in the EPA's submissions pointed to a date certain for when it finally settled on a nonacquiescence position, other than "not yet."

Nevertheless, the EPA defends the district court's grant of summary judgment on the ground that the record as a whole conclusively establishes that the position communicated in the Desk Statement was not "reached" before November 19, 2013. EPA Br. 17.

That is simply wrong. As mentioned, the EPA submitted little to no evidence speaking directly to the timing question, and no direct evidence at all that the date was November 19th. And Hall, for its part, has identified sufficient evidence to support a reasonable inference that the EPA reached its nonacquiescence position sometime before November 19th.

First, on November 13th—six days before the Desk Statement—EPA's Associate General Counsel Neugeboren publicly stated that the EPA's "current contention [is] that the

Court ruling will only be binding to the [Eighth] Circuit States," and that "States will have to deal with the situation on a case-by-case basis." J.A. 240. Neugeboren then matched the EPA's actions to his words, elaborating that the Agency would be "reviewing permits on a case-by-case basis" outside of the Eighth Circuit. J.A. 240. Because the EPA now accepts that a policy in which it "refuse[s] to commit to applying *Iowa League of Cities* as its policy in all jurisdictions * * * is all that intercircuit nonacquiescence requires," J.A. 47, the Neugeboren statement raises a material factual dispute about whether the date of nonacquiescence was as early as November 13, 2013—before all but one of the withheld documents were created.

To be sure, as the district court noted, Neugeboren commented later in his remarks that the EPA did not "have everything figured out yet" and would "be looking for a more holistic approach to managing the utility in question." J.A. 240. Based on those caveats, the district court concluded that Neugeboren's statement "can reasonably be interpreted as the mere recitation of a known fact: a decision of the Eighth Circuit * * * does not 'bind' the EPA outside of the Eighth Circuit." J.A. 49.

Sure, the document *could* be read that way. But it does not have to be. It could just as reasonably be read to support Hall. And it is Hall—not the EPA—who is entitled at this stage to all reasonable inferences from the evidence. When Neugeboren's statement is read in context, and in the light most favorable to Hall, it was just as likely that Neugeboren was referring to ironing out the details of the EPA's *implementation* of its nonacquiescence decision, not its *adoption*. In fact, the EPA included the same sorts of caveats in describing its position three years later, after it had long since settled on not acquiescing. *See, e.g.*, J.A. 167 (*Vaughn* Index asserting that

the EPA "has not, to date, decided whether and to what extent to follow [the] *Iowa League of Cities* decision outside the Eight[h] Circuit, saving those questions for permitting or other case-specific contexts"). So the EPA must agree that such comments are entirely compatible with having already adopted a nonacquiescence position. Given that, on the summary judgment record before us, it is certainly reasonable to infer from Neugeboren's public statement that the nonacquiescence position articulated in the Desk Statement was reached at least a few days earlier.

Other documents in the record support a reasonable inference that the nonacquiescence decision was reached still earlier. In August 2013, when the EPA was considering whether to seek certiorari, the internal Options Memo outlined potential pros and cons of filing or not filing such a petition. J.A. 197–199. The only "Pro" listed in the Options Memo for not seeking certiorari was that the EPA would be free to "formally or informally acquiesce and thereby limit the effect of the decision to the Eighth Circuit." J.A. 199. So it is also reasonable to infer from the Options Memo that, when the EPA declined to seek certiorari by the October 8, 2013 deadline, it was because it had decided not to acquiesce.

Consistent with the district court's analysis, the EPA argues that a decision to seek certiorari is different from a decision not to apply *Iowa League of Cities* outside of the Eighth Circuit. EPA Br. 17. Fair enough. That the EPA declined to seek certiorari by no means conclusively establishes that it had decided by then not to acquiesce. But again, an inference need not be the only possible interpretation of the evidence to preclude summary judgment. All that is needed is a *reasonable* inference. *See Steele*, 899 F.3d at 947. Because the EPA specifically labeled the ability not to acquiesce as the "Pro" for not seeking certiorari, it is

reasonable to infer that when it declined to seek certiorari it had settled on exercising that prerogative.[3]

At bottom, now that the EPA accepts the district court's legal holding that it made a nonacquiescence decision in November 2013, the summary judgment record leaves materially disputed and unanswered when exactly that decision was made. Neither party below argued that November 19th was the definitive date, and record evidence points to a variety of possible answers. We hold only that, applying the summary judgment standard, the EPA has not established as a matter of indisputable fact that the definitive date of nonacquiescence was November 19, 2013. Because the EPA did not meet its burden of demonstrating conclusively that its nonacquiescence determination postdates the creation of all of the still-withheld documents, the district court erred in granting summary judgment to the EPA.

---

[3] Hall also points to an internal October 29, 2013 memorandum ("Moving Forward Memo") as raising a genuine issue of material fact that the EPA had reached its nonacquiescence position at least by that date. Hall Br. 29–31. After arguing that the Moving Forward Memo does not establish such a genuine issue of material fact, the EPA goes on to briefly assert that the memorandum is a privileged document that is not even "properly part of the record in this case and therefore should not be considered in this appeal." EPA Br. 24. The EPA voiced similar objections to the district court after Hall introduced the memorandum into evidence. But the district court was apparently unpersuaded, as it explicitly discussed the Moving Forward Memo in resolving the summary judgment motions. *See* J.A. 35. Nonetheless, because documents both parties agree *are* part of the record establish a genuine and disputed issue of material fact, we need not resolve the dispute over the Moving Forward Memo. On remand, the district court can resolve any such claims of privilege that the EPA may again raise.

**B**

Hall asks this court to go further and hold that the district court erred in not entering summary judgment in its favor by disallowing the deliberative process privilege. Hall Br. 18–19. Hall reasons that, because the district court rejected the EPA's only justification for invoking that privilege—that is, that it had "never rendered or communicated a nonacquiescence decision to anyone *at any time*," Hall Br. 18 (formatting modified)—the district court had no choice but to grant summary judgment in full in its favor.

But Hall overplays its hand. That position suffers from the same factual indeterminacy about timing that infected the district court's entry of summary judgment for the EPA. That the EPA erred in claiming a decisional date of "never" does not, by itself, establish that all of the documents were postdecisional. Again, the record is about as clear as mud on when the EPA finally decided to not acquiesce. And while each party sees its position in the mire, we see only a record that does not conclusively establish whether the withheld materials were created either before or after the EPA reached its decision. Summary judgment does not work in either direction on this dispute.[4]

**C**

None of Hall's other objections succeed.

*First*, Hall argues that the district court erred in denying its motion to conduct additional discovery into "several material

---

[4] Our vacatur of the district court's summary judgment decision moots Hall's procedural objection under Rule 56(f) of the Federal Rules of Civil Procedure to the district court's *sua sponte* selection, without advance notice, of a nonacquiescence date. Hall Br. 19–23.

facts" that remained "in dispute," including "the timing and nature of EPA's nonacquiescence decision[.]" Memorandum of Points and Authorities, *supra*, at 40; Hall Br. 35–39. Because we vacate the district court's grant of summary judgment, we leave it to the district court to decide what steps are necessary to resolve the case consistent with our opinion.

*Second*, Hall argues that the district court abused its discretion in denying Hall's motion to amend its complaint to add a challenge to the adequacy of the EPA's search for responsive documents. Hall does not dispute that it failed to administratively exhaust that claim as the law generally requires. *See, e.g.*, *Bayala v. Department of Homeland Sec.*, 827 F.3d 31, 35–36 (D.C. Cir. 2016) (discussing FOIA's exhaustion requirement).

Hall argues instead that the failure to exhaust is excused because the potential inadequacy of the EPA's search for records first "arose during the litigation and not at the time of FOIA denial[.]" Hall Br. 40. Specifically, Hall contends that the EPA's FOIA response "neither identified the existence of, nor sought to withhold, the Desk Statement." *Id.*

That is true, but beside the point. The EPA never mentioned the Desk Statement in its FOIA response because that document was not responsive to Hall's narrow FOIA request. That request sought only records regarding the presentations made by (i) Stoner at the Water Administrators Association seminar held November 20–22, 2013, and (ii) Stoner and Pollins at the April 9, 2014 forum. The Desk Statement fit neither of those bills. So Hall's failure to exhaust is fatal to its argument.[5]

---

[5] As it turns out, the EPA disclosed the Desk Statement to Hall in response to a different FOIA request. J.A. 146, 148.

*Third*, Hall argues that the district court abused its discretion in denying Hall's motion to strike one of Nagle's declarations for wrongly denying that a nonacquiescence decision had been made. Hall Br. 41–42. Not so. The district court found that Nagle's statements that no nonacquiescence decision had been made reflected only "an earnestly held but mistaken view of the law," not a factual misrepresentation. J.A. 65. That judgment was reasoned and well within the district court's discretion. Nothing in the law compels a district court to strike an entire declaration that includes relevant factual representations simply because the declaration also contains genuinely believed, but mistaken conclusions of law.

## IV

In conclusion, the district court erred in entering summary judgment for the EPA. A genuine issue of material fact remains as to when the EPA adopted its nonacquiescence decision—whether before or on the date of the Desk Statement. That factual dispute is critical to application of the deliberative process privilege. For those reasons, we vacate the district court's grant of summary judgment to the EPA and remand for further proceedings consistent with this opinion.

*So ordered.*