# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 17, 2020        Decided August 21, 2020

No. 19-5088

JUAN LUCIANO MACHADO AMADIS,
APPELLANT

v.

UNITED STATES DEPARTMENT OF STATE AND UNITED STATES
DEPARTMENT OF JUSTICE,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-02230)

---

*Kelly B. McClanahan* argued the cause and filed the briefs for appellant.

*Katie Townsend* argued the cause for *amici curiae* The Reporters Committee for Freedom of the Press and 36 Media Organizations in support of plaintiff-appellant. With her on the brief were *Bruce D. Brown*, *David McCraw*, *Barbara L. Camens*, *Laura R. Handman*, *Alison Schary*, *Kurt Wimmer*, *James Cregan*, *Bruce W. Sanford*, *Mark I. Bailen*, and *Kathleen A. Kirby*.

*Weili J. Shaw*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were

*Jessie K. Liu*, U.S. Attorney, and *Sharon Swingle*, Attorney. *R. Craig Lawrence* and *April D. Seabrook*, Assistant U.S. Attorneys, entered appearances.

Before: ROGERS and KATSAS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge.*[*]

Opinion for the Court filed by *Circuit Judge* KATSAS.

This appeal presents several questions under the Freedom of Information Act. One of them is whether certain record searches were adequate. Another is whether an agency may invoke the deliberative-process privilege to withhold advice provided by subordinate attorneys to their superiors. A third is whether FOIA requesters must exhaust administrative appeals when the agency, after completing its search, offers to conduct another search if presented with additional information.

I

Juan Machado Amadis is a citizen and resident of the Dominican Republic. He repeatedly has applied for a United States entry visa. The Department of State has denied the applications on the ground that Machado is inadmissible as a suspected drug trafficker.

Machado has filed three sets of FOIA requests for information about the denials. He has sought records from the

_____

[*] The late Senior Circuit Judge Stephen F. Williams was a member of the panel at the time the case was argued and participated in its consideration before his death on August 7, 2020. Because he died before this opinion's issuance, his vote was not counted. *See Yovino v. Rizo*, 139 S. Ct. 706, 710 (2019). Judge Rogers and Judge Katsas have acted as a quorum with respect to this opinion and judgment. *See* 28 U.S.C. § 46(d).

State Department and three components of the Department of Justice—the Drug Enforcement Administration, Federal Bureau of Investigation, and Office of Information Policy.

In 2016, Machado filed his first set of requests with the State Department, DEA, and FBI. These requests sought information about Machado's alleged criminal activity. The State Department produced responsive records, but neither the DEA nor the FBI found any. Machado appealed the DEA and FBI determinations to OIP, which adjudicates FOIA appeals within the Justice Department. OIP affirmed the FBI's determination and closed the appeal of the DEA's determination once Machado filed this lawsuit. Machado no longer challenges any response to this first set of requests.

In 2017, Machado filed a second set of FOIA requests. From the State Department, DEA, and FBI, Machado sought records "memorializing or describing the processing of his previous FOIA Request." J.A. 81, 112, 221. And from OIP, he sought records "memorializing or describing the processing of his previous FOIA Appeal[s]." J.A. 280. The State Department produced responsive records. The DEA produced some responsive records right away, then produced others after Machado successfully appealed its determination to OIP. The FBI withheld responsive records. OIP withheld some records as non-responsive, and it produced other records with redactions based on the deliberative-process privilege.

Machado then submitted a third set of FOIA requests to the DEA and FBI. These requests sought "all records, including emails" about Machado. J.A. 129, 241. In response, the DEA informed Machado that its search had located no responsive records and that he was entitled to appeal to OIP. Machado never appealed. DEA also offered to conduct another search if Machado provided additional search terms. Machado

did so, but DEA still was unable to locate any responsive records. The FBI similarly informed Machado that its search had produced no responsive records and that he was entitled to appeal to OIP. Machado never appealed. The FBI also offered to conduct an additional search if Machado provided more information. But in response to an e-mail from Machado's attorney, the FBI clarified that Machado would have to submit additional information through a separate FOIA request, which he did not do.

Machado filed a lawsuit challenging the various agency responses, and the district court granted summary judgment to the agencies. *Machado Amadis v. DOJ*, 388 F. Supp. 3d 1 (D.D.C. 2019).

Machado urges reversal on three grounds. First, he argues that the State Department and DEA failed to conduct adequate searches in response to the second set of FOIA requests. Second, he contends that OIP searched too narrowly and redacted its production too broadly. Third, he argues that the DEA and FBI failed to issue timely determinations on his third set of FOIA requests, making it unnecessary for him to exhaust administrative appeals. We review the district court's decision de novo, *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994), and now affirm.

II

Machado contends that the State Department and DEA conducted inadequate searches in response to his second set of FOIA requests. To prevail on this issue, each agency must show that it "conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (cleaned up); *see DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015). Agencies can satisfy this burden through a "reasonably detailed affidavit,

setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  We accord such affidavits "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks omitted).

## A

From the State Department, Machado sought records "memorializing or describing the processing of his previous FOIA Request No. F-2016-10536." J.A. 81.  The request asked the agency to "exclude any correspondence exchanged with any attorney" representing Machado. *Id.*  The agency searched for records containing the FOIA request number in its FOIA database and in the e-mail account of the analyst who had processed the previous request.  Machado has no quarrel with where the agency searched.  But he objects that the search term, keyed to the prior request number, was unreasonably narrow.  We disagree.

The search term was reasonably calculated to find all responsive records.  An affidavit from the Director of the State Department's Office of Information Programs and Services explained why:  The agency used the FOIA request number "because [its] records are organized by request number." J.A. 57.  It was surely reasonable for the agency to conduct a search that tracked how its own records are organized, just as it surely would be reasonable for our clerk to search by a docket number to locate all court records from a particular case.

Machado hypothesizes that incoming correspondence may not have contained the FOIA request number, even if the

agency consistently used it for internal and outgoing correspondence. As an illustration, Machado notes that the search would not have captured e-mails sent by his attorney to the agency. But Machado specifically asked the agency not to produce e-mails from his attorney, and it is hard to imagine that e-mails from anyone else would bear on how the agency had processed his prior FOIA request. Furthermore, when the agency responded to Machado's attorney, it inserted the FOIA request number into the e-mail's subject line. J.A. 75. The search thus did capture both the response and the initial e-mail, which was appended to the response. This bolsters the agency's statement that it consistently uses FOIA request numbers to track associated documents and correspondence. The State Department's search was reasonable.

B

From the DEA, Machado also sought records "memorializing or describing the processing of his previous FOIA Request." J.A. 112. In response, the agency searched a database called the DEA Freedom of Information/Privacy Act Record System, JUSTICE-004 and located materials associated with the prior request. The DEA initially produced twelve pages, then produced five additional pages on remand from an OIP appeal. Machado contends that the DEA also should have searched individual e-mail accounts.

The DEA's search was reasonably calculated to find all responsive records. In an affidavit, the DEA's Chief FOIA Officer explained that "all responsive information was reasonably likely to be found" in the JUSTICE-004 database. J.A. 100. This makes sense, for the database "consists of records created or compiled in response to FOIA … requests and administrative appeals, including: The original requests and administrative appeals; responses to such requests and

administrative appeals; [and] all related memoranda, correspondence, notes, and other related or supporting documentation." Privacy Act of 1974; System of Records, 77 Fed. Reg. 26,580, 26,581 (May 4, 2012). That description appears in the Federal Register, the contents of which "shall be judicially noticed." 44 U.S.C. § 1507. Given the breadth of the JUSTICE-004 database, which includes all FOIA "correspondence," we conclude that the DEA's search was reasonably calculated to locate all responsive records.

III

Machado sought from OIP records "memorializing or describing the processing of his previous FOIA Appeal[s]." J.A. 280. OIP conducted searches, identified responsive records, and produced them with redactions. Machado contends that OIP interpreted his request too narrowly and redacted the records too broadly.

A

In responding to Machado's request, OIP located its files on his previous appeals. The files contained OIP documents assessing the appeals, as well as DEA and FBI documents created before the appeals were filed. OIP concluded that the request did not cover the latter set of documents. We agree.

Agencies must read FOIA requests "as drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). Here, Machado sought from OIP only records "memorializing or describing the processing" of his prior FOIA appeals. In ordinary usage, this phrase does not encompass records created by other agencies before the appeals were taken. Machado responds that the DEA and FBI documents were contained in OIP's appeal files. True enough, but Machado's request did not seek OIP's entire

case files. OIP properly construed Machado's FOIA request to exclude the underlying source documents.

B

Machado next argues that OIP improperly redacted portions of the records that it did produce. To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency "reasonably foresees that disclosure would harm an interest protected by [the] exemption," *id.* § 552(a)(8)(A)(i)(I). Here, OIP cleared both hurdles.

The records at issue are called "Blitz Forms," which OIP uses to adjudicate FOIA appeals. Line attorneys fill out the forms to identify issues presented in an appeal, to analyze those issues, and to make recommendations to senior attorneys. In turn, senior attorneys review the Blitz Form for an appeal before finally adjudicating it. In this case, OIP produced the Blitz Forms for Machado's prior appeals, but it redacted the fields for recommendations, discussion, and search notes.

OIP redacted the Blitz Forms under the deliberative-process privilege incorporated into Exemption 5 of FOIA. Exemption 5 permits agencies to withhold "intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption thus covers "documents which a private party could not discover in litigation with the agency," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975), including documents protected by the deliberative-process privilege, *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). To fall within the privilege, a document must be predecisional and deliberative. "Documents are predecisional if they are generated before the adoption of an agency policy, and deliberative if they reflect

the give-and-take of the consultative process." *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (cleaned up).

The redacted portions of the Blitz Forms are both predecisional and deliberative. As explained in OIP's affidavit, they were created before OIP decided the appeals, and they reflect "line attorneys' evaluations, recommendations, discussions, and analysis which are prepared for senior-level review and decisionmaking." J.A. 272. Such recommendations from subordinates to superiors lie at the core of the deliberative-process privilege. *See Klamath Water*, 532 U.S. at 8–9.

Machado argues that the Blitz Forms in this case were effectively final decisions because fields provided for reviewer comments and attorney follow-up remained blank. But a recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment. To the contrary, the Supreme Court has held that the deliberative-process privilege protects recommendations that are approved or disapproved without explanation. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 185 (1975).

OIP also reasonably foresaw that disclosure would harm an interest protected by the deliberative-process privilege. The privilege protects "debate and candid consideration of alternatives within an agency," thus improving agency decisionmaking. *Jordan v. DOJ*, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc). After all, "experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances … to the detriment of the decisionmaking process." *Sears, Roebuck & Co.*, 421 U.S. at 150–51 (quotation marks omitted); *see also Klamath Water*,

532 U.S. at 8–9 (deliberative-process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery"). OIP's affidavit adequately explained that full disclosure of the Blitz Forms would discourage line attorneys from "candidly discuss[ing] their ideas, strategies, and recommendations," thus impairing "the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." J.A. 272. Such chilling of candid advice is exactly what the privilege seeks to prevent.

Machado contends that agencies, to justify withholding records under FOIA's foreseeable-harm provision, cannot simply rely on "generalized" assertions that disclosure "could" chill deliberations. Appellant's Br. 31–32 (quotation marks omitted). We have no quarrel with that proposition. But here, OIP specifically focused on "the information at issue" in the Blitz Forms under review, and it concluded that disclosure of that information "would" chill future internal discussions. J.A. 272. The agency correctly understood the governing legal requirement and reasonably explained why it was met here. OIP permissibly withheld the privileged information.

C

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). We have held that district courts cannot approve withholding exempt documents "without making an express finding on segregability." *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (quotation marks omitted).

Machado contends that the district court here did not address segregability, which necessitates a remand. But the court did not approve the withholding of entire documents

merely because portions of them were exempt from disclosure. To the contrary, it held that "[t]he deliberative process privilege attaches to the portions of the Blitz Forms" that OIP sought to withhold, and it had no occasion to address other portions of the forms, which OIP had already produced. *Machado Amadis*, 388 F. Supp. 3d at 19. Under these circumstances, we are unsure what further analysis Machado would have the district court conduct.

In any event, if a district court has not adequately addressed segregability, we may do so in the first instance. *Juarez v. DOJ*, 518 F.3d 54, 60 (D.C. Cir. 2008). Here, we readily conclude that OIP appropriately segregated exempt and non-exempt portions of the Blitz Forms. In deciding what portion of the Blitz Forms to withhold, OIP conducted a "line-by-line review," determined that "some non-exempt, factual information within them could be segregated for release," and redacted only "pre-decisional, deliberative notes made by line attorneys during the course of adjudicating administrative appeals." J.A. 273. This ensured that the redactions were no broader than necessary to protect materials covered by the deliberative-process privilege.

IV

For his third set of FOIA requests, Machado contends that the DEA and FBI failed to issue timely determinations, which made it unnecessary for him to exhaust administrative appeals.

"As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress." *CREW v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013). Exhaustion is required "so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Nonetheless, a

requester is "deemed to have exhausted his administrative remedies" if the agency fails to comply with applicable statutory time limits. 5 U.S.C. § 552(a)(6)(C)(i). One of them requires the agency, within 20 business days after receiving a request, to "determine ... whether to comply" and to notify the requester of "such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i). In the case of an adverse determination, the agency also must inform the requester of his right to take an administrative appeal. *Id.*

Machado submitted his third set of FOIA requests on May 17, 2017. It is undisputed that the DEA and FBI responded within 20 business days, and Machado did not appeal either response to OIP. But, Machado contends, neither agency response was a "determination" within the meaning of FOIA, so he did not have to appeal.

To make a proper FOIA determination, an agency must: "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW*, 711 F.3d at 188. The DEA and FBI response letters satisfied these requirements. The DEA stated that it had "conducted a search for responsive records" but found none, and it informed Machado that he could "administratively appeal" to OIP. J.A. 132–33. Likewise, the FBI stated that it had "conducted a search of the Central Records System" but was "unable to identify main file records responsive" to the request, and it informed Machado that he could "file an appeal" to OIP. J.A. 254–55. Each response satisfied the statute.

The agencies also offered to conduct further searches if Machado provided more information. The DEA offered: "If

you provide additional search criteria, we will initiate a second search for any DEA records pertaining to [Machado]." J.A. 133. The DEA said it would close the case file if Machado did not provide further information. *Id.* The FBI made a similar offer: "If you have additional information pertaining to the subject that you believe was of investigative interest to the Bureau, please provide us with the details and we will conduct an additional search." J.A. 254. Machado contends that because the agencies made these offers, their responses were not actually FOIA determinations.

Machado is mistaken. By offering to conduct a "second" search if he provided "further" information, or to conduct an "additional" search if he provided "additional" information, neither agency backed away from the finality of the adverse determination already made—that a sufficient agency search had yielded no responsive records. At most, the DEA and FBI offered expedited processing of any follow-up request, even though agencies generally may "make requesters refile (and go to the end of the queue) when they want to alter the parameters of their initial search request." *Rubman v. USCIS*, 800 F.3d 381, 392 (7th Cir. 2015). Although the FBI later retracted its offer to expedite, that does not undermine our conclusion that its initial response constituted a FOIA determination. In sum, offers to conduct additional searches are immaterial to whether an agency has made a "determination" under FOIA. The DEA and FBI responses were proper determinations under FOIA, which triggered Machado's obligation to exhaust his administrative appeals.

Alternatively, Machado asks us to excuse his failure to exhaust on policy grounds. As Machado sees things, administrative appeals on his third set of FOIA requests would have been futile because his prior appeals had proved unsuccessful. That is not entirely accurate. On Machado's

second FOIA request, the DEA produced some records, then produced others after Machado successfully appealed its determination to OIP. Moreover, as even Machado concedes, his third set of FOIA requests was in many respects broader than his earlier ones and included more "specific leads for the agencies to follow." Appellant's Br. 11. For these reasons, we cannot conclude that OIP would have failed to give any appeals their due consideration. Administrative appeals thus would have furthered the "purposes and policies" of the exhaustion requirement. *See Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam).

\* \* \* \*

The district court properly granted summary judgment to the agencies.

*Affirmed.*