# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 15, 2021         Decided May 17, 2022

No. 20-5233

CAMPAIGN LEGAL CENTER,
APPELLEE

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01771)

---

No. 20-5234

CAMPAIGN LEGAL CENTER,
APPELLEE

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01187)

*Gerard Sinzdak*, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Brian M. Boynton*, Acting Assistant Attorney General at the time the briefs were filed, and *Mark B. Stern*, Attorney.

*Elizabeth E. Olien* argued the cause for appellee. On the brief were *Adam Miller* and *Nadav Ariel.*

Before: MILLETT, KATSAS, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: On December 12, 2017, Arthur Gary, General Counsel of the Justice Management Division at the Department of Justice, sent a letter to the Census Bureau requesting the addition of a citizenship question to the 2020 Census. Four months later, then-Secretary of Commerce Wilbur Ross relied on the Gary Letter to direct the Census Bureau to include a citizenship question on the Census questionnaire.

Shortly after the Department of Justice sent the Gary Letter, the Campaign Legal Center filed a Freedom of Information Act ("FOIA") request with the Justice Department seeking documents that would explain how and why the agency came to request the citizenship question. The Department withheld more than 100 pages of responsive documents under FOIA Exemptions 5 and 6.

As relevant here, the district court held that some of the Justice Department's withholdings based on the deliberative process privilege were improper, and ordered the Department to produce those documents. The court found that responsive drafts of the Gary Letter and associated emails could not be withheld because they were completed after the Attorney

General had already decided to request the citizenship question.

We reverse in part and remand. The process of drafting the Gary Letter to request the addition of a citizenship question in a way that protected the Department's litigation and policy interests involved the exercise of policymaking discretion, and so the letter's content itself was a relevant final decision for purposes of FOIA's deliberative process privilege. For that reason, we hold that the Justice Department properly withheld non-final drafts of the letter, and that most of the Department's redactions of associated emails were lawful. But because the record fails to establish whether several redacted emails were predecisional and deliberative, we remand for the district court to reexamine those documents.

# I

## A

Congress enacted the Freedom of Information Act to increase governmental transparency and to "protect[] the basic right of the public to be informed about what their government is up to." *Hall & Assocs. v. EPA*, 956 F.3d 621, 624 (D.C. Cir. 2020) (internal quotation marks and citation omitted).

FOIA requires covered federal agencies to provide documents upon request by a member of the public unless the records fall into an enumerated exemption. *See* 5 U.S.C. § 552(b)(1)–(9). Those "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of" FOIA. *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). As a result, even for exempt documents, agencies must disclose "'any reasonably segregable portion of a record,' the 'amount of information deleted, and the exemption under which the deletion is made.'" *Hall & Assocs.*,

4

956 F.3d at 624 (alteration omitted) (quoting 5 U.S.C. § 552(b)). In addition, under the FOIA Improvement Act of 2016, an agency may only withhold information under a FOIA exemption if it "reasonably foresees that disclosure would harm an interest protected by an exemption[,]" or if "disclosure is prohibited by law[.]" Pub. L. No. 114-185, § 2, 130 Stat. 538, 539 (codified at 5 U.S.C. § 552(a)(8)(A)(i)).

This case concerns Exemption 5, which excludes from FOIA's disclosure obligation "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5).

Exemption 5 "incorporates the privileges available to Government agencies in civil litigation." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). Among those privileges is the deliberative process privilege. *Id.* That privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).[1]

---

[1] The deliberative process privilege only shields documents from FOIA disclosure for 25 years after they are created. *See* 5 U.S.C. § 552(b)(5).

5

**B**

In May 2017, Secretary of Commerce Wilbur Ross asked his Director of Policy, Earl Comstock, why the Department had not made progress in adding a citizenship question to the Census. *See* J.A. 184. Comstock reassured the Secretary that "we will get that [question] in place." J.A. 184. Comstock explained that Commerce needed the Justice Department to request the addition of the question, and added that "we have the court cases to illustrate that DoJ has a legitimate need for the question to be included." J.A. 184.

As of September 2017, however, the Justice Department still had not requested the addition of a citizenship question to the Census. *See Department of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019); J.A. 188. Comstock then asked his agency's legal staff whether Commerce could add the citizenship question "without receiving a request from another agency." *Department of Commerce*, 139 S. Ct. at 2575.

Ultimately, though, Commerce decided that the best course of action was for the Justice Department's Civil Rights Division to make the request on the ground that improved citizenship data would help with enforcement of the Voting Rights Act. *Department of Commerce*, 139 S. Ct. at 2575. Secretary Ross then personally reached out to Attorney General Jeff Sessions about requesting the citizenship question. On September 17th, while scheduling a call between the cabinet members, a staffer in the Office of the Attorney General wrote to a counterpart at the Department of Commerce: "[I]t sounds like we can do whatever you all need us to * * *. The AG is eager to assist." J.A. 190; *see also Department of Commerce*, 139 S. Ct. at 2575 ("[I]t was not until * * * Secretary [Ross] contacted the Attorney General directly that DOJ's Civil Rights Division expressed interest in acquiring census-based

citizenship data to better enforce the VRA."). John Gore, the Acting Assistant Attorney General for the Civil Rights Division, was tasked with writing the letter, and Arthur Gary, General Counsel of the Justice Management Division, was to be the letter's signatory.

In the Fall of 2017, an outside advisor to the Department of Commerce gave Gore a draft letter requesting the addition of a citizenship question to the Census. Gore also received a memorandum from an attorney in Commerce's Office of General Counsel that had "look[ed] into the legal issues [regarding the citizenship question] and how Commerce could add the question to the Census itself." J.A. 188.

By early November, Gore had completed his own first draft of the letter and circulated it for comments within the Justice Department's Civil Rights Division. The Voting Section Chief provided feedback, as did a political appointee in Gore's office. For the rest of the month, Gore and Gary continued to discuss the letter and to exchange drafts. On November 27th, Gore sent a draft to Justice Department leadership. Over the following two weeks, Rachael Tucker of the Office of the Attorney General and Robert Troester of the Office of the Deputy Attorney General reviewed and commented on the draft. Two other advisors to the Attorney General also participated in the drafting process.

On December 8th, with the final feedback from Justice Department leadership incorporated, Gore told Gary that the letter was ready to send to the Census Bureau. On the afternoon of December 12th, Gary's secretary mailed the letter to Ron Jarmin, Acting Director of the Census Bureau. *See* J.A. 631–633 (final Gary Letter).

In the final Gary Letter, the Justice Department requested that the Census Bureau add "a question regarding citizenship"

to the 2020 Census questionnaire. J.A. 631. The Department reasoned that the resulting "data is critical to the Department's enforcement of Section 2 of the Voting Rights Act" because the Department "needs a reliable calculation of the citizen voting-age population in localities where voting rights violations are alleged or suspected." J.A. 631.

The letter also gave several reasons why the Department wanted the Bureau to ask the citizenship question on the main Census questionnaire rather than on the American Community Survey, a non-comprehensive population survey separately conducted by the Census Bureau. At bottom, the letter claimed that data from the Census would be more accurate than Community Survey data and would be better suited for comparison with the total population estimates that jurisdictions use in redistricting.

In March 2018, Secretary Ross issued a memorandum directing the Census Bureau to place a citizenship question on the Census questionnaire, relying in large part on the Gary Letter as the basis for his decision.

In June 2019, the Supreme Court held that Secretary Ross's rationale for adding the citizenship question to the Census "seems to have been contrived[,]" and the decision to add the question was unreasoned. *Department of Commerce*, 139 S. Ct. at 2575–2576.

## C

On February 1, 2018, the Campaign Legal Center ("Center") submitted a FOIA request to the Justice Department. The Center sought "all records pertaining to Arthur E. Gary's December 12, 2017 request to the Census Bureau to add a Citizenship question to the 2020 Census Questionnaire." J.A. 23. The Center requested responsive

documents from the Justice Management Division, the Attorney General's Office, and the Civil Rights Division.

On February 28th, the Civil Rights Division withheld all responsive documents from disclosure under Exemption 5. A month later, the Center sought administrative review of the Division's decision. After receiving no response from the Division for two months, the Center filed suit against the Justice Department to enforce its FOIA request. *See* 5 U.S.C. § 552(a)(6)(A)(ii), (C)(i).

When the Justice Management Division and the Office of the Attorney General likewise failed to respond to the FOIA request in a timely manner, the Center sued the Justice Department a second time to enforce its FOIA request directed at those two components.

While the cases were pending, all three components of the Justice Department produced some documents to the Center while withholding others in whole or in part. As of the time of the district court decisions, the Civil Rights Division had found 272 responsive pages and released 184 in whole or in part. The Office of the Attorney General had found 289 responsive pages and had provided 198 of them in whole or in part. And the Justice Management Division had found 131 pages and had released 116 pages, with some redactions. [2] The Justice

---

[2] These numbers include documents referred to the three components by other parts of the Justice Department for FOIA processing.

Department argued that its withholdings were justified under FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5), (6).[3]

The parties cross-moved for summary judgment in both cases. As relevant here, their dispute concerned the validity of the Justice Department's withholding of drafts of the Gary Letter and some or all of approximately twenty related emails under Exemption 5's deliberative process privilege. In both cases, the district court granted the Center summary judgment as to those documents and ordered the three Justice Department components to produce them to the Center. *Campaign Legal Center v. Department of Justice*, 464 F. Supp. 3d 397, 408–409 (D.D.C. 2020) (*Campaign Legal Center I*); *Campaign Legal Center v. Department of Justice*, No. 18-cv-01771, 2020 WL 2849909, at *14 (D.D.C. June 1, 2020) (*Campaign Legal Center II*).

The court found that Attorney General Sessions had made his final decision to send the request for a citizenship question to the Census Bureau before the Gary Letter was even drafted. *See Campaign Legal Center I*, 464 F. Supp. 3d at 407–408; *Campaign Legal Center II*, 2020 WL 2849909, at *7–8; *see also Department of Commerce*, 139 S. Ct. at 2575. The court reasoned that, because the letter "did not involve discretion about an agency position or about the primary reasons for the agency position[,]" *Campaign Legal Center I*, 464 F. Supp. 3d at 407, its composition did not reflect the "exercis[e of] policy-implicating judgment" required to trigger the deliberative process privilege, *id.* (internal quotation marks omitted)

---

[3] Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). The Center does not challenge here any of the Justice Department's Exemption 6 withholdings.

(quoting *Petroleum Info. Corp. v. Department of the Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992)); *see Campaign Legal Center II*, 2020 WL 2849909, at *7 (same). For that reason, the district court ruled that the process of writing the Gary Letter was not predecisional. Because documents must be both predecisional and deliberative to fall under the deliberative process privilege, the court held that the Gary Letter documents were not exempt from disclosure.

The district court then ordered the Justice Department components to produce the drafts of the Gary Letter that the agency had withheld in full, and to remove Exemption 5 redactions from emails written by various Justice Department employees while drafting and editing the Gary Letter.[4]

The Justice Department timely appealed the district court's orders to release drafts of the Gary Letter and related emails.

**II**

The district court had jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

We have jurisdiction under 28 U.S.C. § 1292(a)(1). Though the district court's orders were not final, *see* 28 U.S.C. § 1291, because they did not "fully resolve all the issues before that court," they are appealable under 28 U.S.C. § 1292(a)(1) as injunctions ordering disclosure. *Judicial Watch, Inc. v.*

---

[4] To the extent the Justice Department appeals the court's order to release the final Gary Letter, any dispute over that part of the order is moot because the Department has already released it. *See Bayala v. Department of Homeland Security*, 827 F.3d 31, 34 (D.C. Cir. 2016); Declaration (Third) of Vanessa R. Brinkmann at 5 n.3, *Campaign Legal Center II*, 2020 WL 2849909 (No. 18-cv-01771), ECF No. 48-2; *see also* J.A. 829, 440.

*Department of Energy*, 412 F.3d 125, 128 (D.C. Cir. 2005); *see also Leopold v. CIA*, 987 F.3d 163, 169 (D.C. Cir. 2021) ("There is no doubt that orders requiring the disclosure of documents [in a FOIA case] are appealable injunctions.") (internal quotation marks and citation omitted).

We review a district court's grant of summary judgment in FOIA cases *de novo*. *Protect Democracy Project, Inc. v. National Security Agency*, 10 F.4th 879, 884 (D.C. Cir. 2021). Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a FOIA summary judgment motion, "courts may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Reporters Comm.*, 3 F.4th at 361.

## III

The deliberative process privilege shields documents that debate and discuss proposed agency decisions before they are finalized. *See Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001). The privilege ensures "that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism[.]" *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The privilege also shields "policymakers from premature disclosure of their proposals before they have been completed or adopted[,]" promoting full and robust consideration of agency options. *Reporters Comm.*, 3 F.4th at 361. And it protects the public from being misled by "documents suggesting reasons and rationales for a course of action which

were not in fact the ultimate reasons for the agency's action." *Coastal States*, 617 F.2d at 866.

Ultimately, the privilege is designed to improve governmental decisionmaking by encouraging public servants to speak candidly with one another and to fully flesh out the reasons for and against potential agency actions before they are taken. *See Fish & Wildlife Serv.*, 141 S. Ct. at 785; *see also Sears*, 421 U.S. at 151.

To qualify for the privilege a document must be both predecisional and deliberative. *Machado Amadis v. Department of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).

Documents are predecisional if "they were generated before the agency's final decision on the matter[.]" *Fish & Wildlife Serv.*, 141 S. Ct. at 786. A paradigmatically predecisional document is one prepared "to assist an agency decisionmaker in arriving at [a] decision, rather than to support a decision already made." *Petroleum Info. Corp.*, 976 F.2d at 1434 (internal quotation marks and citation omitted). Documents qualify as deliberative if "they were prepared to help the agency formulate its position." *Fish & Wildlife Serv.*, 141 S. Ct. at 786.

While the "predecisional" prong turns centrally on whether agency communications precede a final decision, the "deliberative" prong focuses on whether the substance of the documents "reflects the give-and-take of the consultative process[.]" *Reporters Comm.*, 3 F.4th at 362 (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)).

To demonstrate that a document is deliberative, the government must explain the role it played in administrative decisionmaking—the "who, what, where, and how" of internal governmental deliberations. *Judicial Watch, Inc. v.*

*Department of Justice*, 20 F.4th 49, 57 (D.C. Cir. 2021) (internal quotation marks omitted). To meet that burden, the government typically must show "the roles of the document drafters and recipients[,]" the "nature of the withheld content[,]" and the "stage within the broader deliberative process in which the withheld material operates[.]" *Id*. at 56. Finally, the government must explain "the way in which the withheld material facilitated agency deliberation." *Id*.

We hold that all of the withheld drafts of the Gary Letter, and the bulk of the related emails, were both predecisional and deliberative. The record on five of the redacted emails, however, is too sparse for us to determine whether they fall within the scope of the privilege. So as to those documents, we remand to the district court for further consideration.

**A**

**1**

To show that the drafts of the Gary Letter and associated emails qualify as predecisional, the Justice Department bears the burden of demonstrating that they were created "during an agency's deliberations about a policy," rather than simply "embody[ing] or explain[ing] a policy that the agency adopts." *Fish & Wildlife Serv.*, 141 S. Ct. at 783. Whether documents precede a final, adopted decision must be analyzed "in the context of the administrative process which generated them." *Id*. at 786 (quoting *Sears*, 421 U.S. at 138). The question is a "functional rather than [a] formal inquiry." *Id*. at 788. If, for example, an agency hides "a functionally final decision in draft form, the deliberative process privilege will not apply." *Id*. After all, "[w]hat matters * * * is not whether a document is last in line, but whether it communicates a policy on which the agency has settled." *Id*. at 786.

The parties do not dispute, nor could they on this record, that the documents at issue were created after the Attorney General's decision to request that the Census Bureau include a citizenship question on the Census. So they were not predecisional as to that policy judgment.

But that does not end our analysis. The policy judgments involved in the formulation of the Gary Letter went beyond the single, bottom-line decision to request a citizenship question. As precedent from this court has recognized, the substantive judgment calls made in the process of drafting and editing a formal agency document that first communicates a policy decision can themselves embody distinct policy determinations, especially when the content of that communication itself shapes and sharpens the underlying policy judgment or will have direct consequences for ongoing agency programs and policies. *See Reporters Comm.*, 3 F.4th at 362–364. More specifically, agency choices about what rationales, justifications, and limitations to provide—and which to leave out—in articulating an important agency decision can involve difficult and substantive policy determinations. Debate and discussion about such statements precede—are predecisional to—the actual determination of how best both to define the scope and contours of the new policy, and to persuasively communicate its terms and rationale to the public. That is especially the case when those decisions involve "critical judgment calls aimed at advancing the agency's" distinct policy interests. *Id.* at 363; *see also Russell v. Department of the Air Force*, 682 F.2d 1045, 1049 (D.C. Cir. 1982) ("The policies embodied in Exemption [5] are as applicable to the * * * editorial review process as they are to other agency deliberations that precede agency decisions.").

In other words, even after an agency head has set the direction of agency policy at the macro level, the subsequent

work needed to define, refine, debate, and flesh out the boundaries of and justifications for that position can, upon a proper showing, also qualify as predecisional. In *Reporters Committee*, for example, we held that emails discussing a draft letter from the Director of the FBI to the *New York Times* defending a controversial agency policy were predecisional. *Reporters Comm.*, 3 F.4th at 362–364. We noted that the emails were written "not so much to explain the agency's already-decided policy, but to figure out how to best promote and ensure the continuation" of a policy facing "intense congressional and public criticisms[.]" *Id*. at 363. Mounting such a defense often involves "internal debates and deliberations about whether and how best to endorse and to advocate" for consequential policy decisions. *Id*. at 364. Those are precisely the type of internal governmental discussions the deliberative process privilege is designed to protect. *Cf. National Security Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014) (Kavanaugh, J.) (editing decisions can "involve[ the] policy-oriented judgment" that is the hallmark of actions protected by the deliberative process privilege) (formatting modified and citation omitted).

Similarly, in *Dudman Communications Corp. v. Department of the Air Force*, this court held that a draft agency history of Air Force actions in South Vietnam was predecisional. 815 F.2d 1565, 1568–1569 (D.C. Cir. 1987). Even though the Air Force had already "decided to publish a history" on that subject before the draft was written, we found that pre-publication "editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis"—were protected. *Id.* at 1566, 1569.

That makes sense. As even the Center agrees, *see* Oral Arg. Tr. 29:16–30:6, after the Solicitor General of the United States makes the final decision to appeal or to file a case in the

Supreme Court, the internal deliberations involved in drafting and defining the precise content and reach of agency arguments, as well as how most effectively to give voice to the agency position in a brief, all involve the type of substantive policy judgments that qualify as predecisional.

Likewise, even after an administrative law judge determines how to rule on a case, the process of drafting a decision will generally involve the iterative weighing of legal and policy concerns that precede (and are predecisional to) the ultimate agency work product. In that way, spelling out a policy's metes and bounds and its justifications may involve additional policy judgments beyond the initial decision to pursue an overarching goal.

Much the same happened here. The record demonstrates that, in drafting the Gary Letter, the Justice Department was not simply describing an already-made agency decision. Instead, it was engaged in formulating and refining both the actual content of and the public rationale for a new and consequential governmental policy in a way that required balancing the proposed justifications for a citizenship question with other departmental policy and litigation interests. To that point, the Acting Chief of the Civil Rights Division's Freedom of Information/Privacy Act Branch, Tink Cooper, attested that, in the drafting and editing process, personnel within the Justice Department sought "review and input," requested additional "relevant information," and engaged in a "frank discussion of vital enforcement interests[.]" Declaration of Tink Cooper ¶ 30, J.A. 456; *see also id*. ¶¶ 24–26, J.A. 454–455 (similar statements regarding emails between Gore and Justice Department leadership). Several of the emails from Justice Department personnel "contain attorney discussion, opinions, and analyses of the various draft versions[,]" evidencing that

agency staff were still making substantive and sensitive legal judgments. J.A. 608 (Civil Rights Division *Vaughn* Index).

Critically, the record shows that the Justice Department did not rotely adopt the draft letter provided to Acting Assistant Attorney General Gore by an advisor to the Commerce Department. The letter from the Commerce advisor is barely more than a page in length and contains almost no analysis of case law. J.A. 645–646; *see also* J.A. 651; Defendant's Resp. to Pl.'s Second Notice of Suppl. Authority, *Campaign Legal Center I*, 464 F. Supp. 3d 397 (No. 18-cv-01187), ECF Nos. 28 & 28-1. That draft asserted that the American Community Survey "is not viable and/or sufficient for purposes of redistricting[,]" and that recent "Federal Court decisions will require block level data that can only be secured by a mandatory question in the 2020 [Census]." J.A. 645.

The Gary Letter, by contrast, runs over three pages, and includes numerous citations and analyses of case law. The language is also notably more nuanced and caveated, reflecting the fact that careful institutional judgments were still being made about the policy boundaries of the rationale for the Justice Department's request and its legal justification. For example, the Gary Letter says only that the "census questionnaire is the *most appropriate* vehicle for collecting" citizen voting-age population data, not that it is required by court decisions. J.A. 631 (emphasis added); *compare* J.A. 631, *with* J.A. 645 (Commerce advisor letter stating that "recent Court decisions * * * require[]" data that can "only be provided" by the Census). Similarly, the Gary Letter says that the American Community Survey data is not "ideal" for redistricting purposes, rather than declaring it inviable. J.A. 632; *compare* J.A. 632, *with* J.A. 645 (Commerce advisor letter

stating that American Community Survey "data is not viable and/or sufficient for purposes of redistricting").[5]

In short, a comparison of the letter given to the Department by a Commerce advisor and the final Gary Letter supports the Civil Rights Division's explanation that, in drafting and editing the letter, agency staff carefully considered how best to protect "vital enforcement interests[.]" Cooper Decl. ¶ 30, J.A. 456. For example, an unqualified rejection of the viability of Community Survey data might have weakened the Justice Department's ability to use such data in already pending or future litigation. That type of sensitive determination about how to promote a new and potentially controversial policy proposal while protecting ongoing agency interests mirrors the kind of policy discussions this court recognized as predecisional in *Reporters Committee*. *See* 3 F.4th at 363 (emails sent as "part of an internal dialogue about critical judgment calls aimed at advancing the agency's interests in the midst of a vigorous public debate about [a policy's propriety]" were predecisional).

The Center suggests that this case is different because the "Gary [L]etter * * * was simply a pretext" and was not "describing an actual policy decision of the Department[.]" Oral Arg. Tr. 31:11–13; *see also* Center Br. 8–9. But the Center has not cited any case under FOIA that has recognized an exception to the deliberative process privilege for pretextual

_____

[5] *Compare also*, *e.g.*, J.A. 645 (Commerce advisor letter asserting that "data on citizenship is specifically required to ensure that the Latino community achieves full representation in redistricting"), *with* J.A. 631–633 (Gary Letter making no such claim); J.A. 633 (Gary Letter requesting that the Census Bureau "maintain the citizenship question on the ACS"), *with* J.A. 645–646 (Commerce advisor letter making no such request).

documents, nor has it advanced a developed argument to that effect.[6]

To sum up, read "in the context of the administrative process which generated them[,]" the drafts of the Gary Letter and the bulk of associated communications are predecisional because the decision to request a citizenship question itself triggered a new and related series of substantive policy judgments about how best to formulate and justify such a request in the first instance, which reasons to provide and which to omit, and what limitations to impose on the request. *Fish & Wildlife Serv.*, 141 S. Ct. at 786 (citation omitted). The Justice Department did not conclude that decisionmaking process until it produced the final draft of the Gary Letter.[7]

---

[6] The best the Center musters is a citation to *In re Sealed Case*, stating that "[w]here the documents sought shed light on a false justification for a policy, withholding should be denied 'on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.'" Center Br. 12 (secondary internal quotation marks omitted) (quoting *In re Sealed Case*, 121 F.3d. 729, 738 (D.C. Cir. 1997)). That case, though, involved a privilege assertion in litigation. And we have already held that the type of balancing undertaken when the deliberative process privilege is asserted in litigation "does not figure into privilege determinations under FOIA[.]" *Protect Democracy Project*, 10 F.4th at 886.

[7] The Center never raised before the district court or this court the question of whether the Department's declarations demonstrated the type of reasonably foreseeable harm required by the FOIA Improvement Act, 5 U.S.C. § 552(a)(8)(A)(i)(I). *See Reporters Comm.*, 3 F.4th at 369–372. So that question is not before us.

**2**

In addition to being predecisional, all of the Gary Letter drafts, and most of the associated email communications, are also deliberative. That is, they "reflect the give-and-take of the consultative process" underlying the formulation of the Gary Letter and its proposed policy justifications for the requested citizenship question. *Judicial Watch, Inc. v. Department of Defense*, 847 F.3d 735, 739 (D.C. Cir. 2017) (formatting modified and citation omitted). Unlike discussions about "already-made and in-place policy choices[,]" *Reporters Comm*., 3 F.4th at 367, the Justice Department's crafting of the Gary Letter entailed exactly "the type of back-and-forth exchange of ideas, constructive feedback, and internal debate * * * that sits at the heart of the deliberative process privilege[,]" *id.* at 364. The withheld documents here are actively edited drafts of an unfinished, work-in-progress policy letter, along with emails exchanging ideas about what that statement should or should not say. Such "[p]roposed drafts of a non-final agency decision that are still undergoing review, debate, and editing" constitute "deliberative work in progress[.]" *Id.*

As to most of the withheld documents, the Justice Department has also met its burden to explain what role the communications played in the deliberative process. *See Judicial Watch*, 20 F.4th at 56–57. The Department identified (i) who sent and read the files at issue by name and position within the agency, (ii) what stage of the process they addressed, with specific reference to the state of the draft, and (iii) what the comments involved, such as language changes and other recommendations about the best way to articulate the precise content of and justifications for this new agency policy. *See* J.A. 506, 545–550, 552–554, 558–562, 566–567, 594, 597–598, 604–607.

The declarations and redacted emails also explain how "the withheld material facilitated agency deliberation." *Judicial Watch*, 20 F.4th at 56. They show that these documents contain close line edits and editorial suggestions by named officials in the Department of Justice—most of them senior—on a letter staking out the agency position on an issue they considered sensitive, important, and potentially controversial. *See, e.g.*, J.A. 596 (Gore explaining in email to Voting Section Chief Chris Herren that the draft Gary Letter is "confidential and close hold"). And the documents contained comments grounded in substantive legal analysis, *see, e.g.*, J.A. 507 (Gary telling Gore that he is "get[ting] through the cases" to comment on the draft letter), as well as edits by senior management altering the draft, *see* J.A. 605–607.

In other words, the comments and exchanges helped formulate a statement that advanced and protected a balance of departmental interests. Unlike in cases where we have found the agency explanation wanting, here—when we consider the whole record—"there was little mystery as to the who, what, where, and how of the deliberative process and the role played by [most of] the withheld material." *Judicial Watch*, 20 F.4th at 57 (internal quotation marks omitted).

The Center's only argument to the contrary is that the Gary Letter documents cannot be deliberative because they are post-decisional. *See* Plaintiff's Cross-Mot. for Summ. J. at 17, *Campaign Legal Center II*, 2020 WL 2849909 (No. 18-cv-01771), ECF No. 24 ("Post-hoc documents providing justifications for a pre-decided policy" do not show policy discretion and therefore play no consultative role); Plaintiff's Cross-Mot. for Summ. J. at 20, *Campaign Legal Center I*, 464 F. Supp. 3d 397 (No. 18-cv-01187), ECF No. 15 (similar). Because we hold that the formulation of the final Gary Letter itself involved the type of predecisional discretionary

judgments, consultations, and policy calls that the deliberative process privilege protects, this argument fails.[8]

**3**

Finally, the Center argues that permitting the withholdings here undermines the goals of the deliberative process privilege. Center Br. 9–13. Not so. The privilege protects "internal dialogue about critical judgment calls aimed at advancing the agency's interests[,]" particularly around issues that spark "vigorous public debate[.]" *Reporters Comm.*, 3 F.4th at 363. Disclosing internal deliberations about controversial issues, like those at issue here, can be especially likely to endanger "candid discussion within the agency." *Access Reports v. Department of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (internal quotation marks and citation omitted). In such circumstances, the exemption plays an important role in protecting government employees who may feel pressure to "carefully toe the party line" just when critical debate is needed most. *Dudman*, 815 F.2d at 1569.

**B**

While most of the documents were properly withheld, the record leaves unsettled the propriety of the Justice Department's redaction of five emails. So we remand as to those documents for the district court to reconsider consistent

---

[8] The Center asks that we remand the question of whether the documents were deliberative because the district court did not address it. Center Br. 8 n.1. We decline to do so in this case as to most of the records at issue because our review is *de novo*, the record is fully developed, and the Center's arguments about the deliberative and predecisional prongs are identical. *See Porup v. CIA*, 997 F.3d 1224, 1238–1239 (D.C. Cir. 2021).

with this opinion. On remand, the government will of course "bear[] the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. Department of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

In particular, several of the emails appear to postdate the letter-drafting process, meaning they would not be exempt on the current record. On December 12, 2017, Gore and Rachael Tucker, an official in Justice Department leadership, exchanged four emails, seemingly about the Gary Letter. *See* Defendant's Mot. for Summ. J., Ex. I, at 103, *Campaign Legal Center II*, 2020 WL 2849909 (No. 18-cv-01771), ECF No. 22-7. All four emails were sent between 6:27 p.m. and 6:58 p.m., and all are redacted in full. *Id.* Yet the Justice Department appears already to have mailed the final Gary Letter to the Commerce Department that afternoon. *See id*. at 104. The government nowhere explained how these emails are predecisional given its argument that the relevant final decision for the documents at issue here was the final Gary Letter, which had already been sent out. *See* Oral Arg. Tr. 5:5–8 (Justice Department attorney answering the question "[W]hat is the relevant decision to which these documents are pre-decisional?" with "the official version of the [Gary] Letter that was sent on [*sic*] December 2017"); *see also* Gov. Br. 12.

Similarly, on December 12th, Justice Department official Gene Hamilton emailed Tucker with the subject line "RE: Letter[.]" J.A. 442. The Justice Department's declarations and supporting documents do not identify when on December 12th Hamilton sent this email, nor do they specify that it was sent before the Gary Letter was finalized.

Because there are still "genuine dispute[s] over * * * question[s] of material fact" as to these emails, the Justice Department has failed to provide the "indispensable predicate

for a grant of summary judgment" on the current record.  *Hall & Assocs.*, 956 F.3d at 630.

**IV**

We reverse the district court's judgment as to all drafts of the Gary Letter and most of the associated emails.  We remand the withholding decision regarding the five emails identified above for further consideration consistent with this opinion.

*So ordered.*